Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office. I represent Appellant Jesus Contreras. I'm going to try to reserve three minutes of my time, and I will watch the clock. Mr. Contreras is appealing the Court's denial of his motion to suppress. And in this case, Mr. Contreras was purportedly pulled over because he had tinted windows and no front license plate. He was calm and compliant throughout the stop. The officer first asked Mr. Contreras if he was on probation or parole. He was not. Mr. Contreras provided Gomez, the officer with the vehicle registration, the insurance information, his temporary ID information that he had failed the DMV test, court documents showing that a case had been dismissed. The officer told Contreras, you are not under arrest, instructed him to keep your hands on his head. Contreras followed the directions but asked, why are you handcuffing me? The officer said he saw tools in the car within his reach. But in fact, as the evidence shows, there were no tools in the car visible to the officer within Contreras' reach. So Contreras was handcuffed with his hands behind his back. Meanwhile, the officer slow walked the paperwork to the computer, stood idly by, called another officer to come by and interview Jesus Contreras. I don't know the facts. What exactly is the objection you're raising here? I mean, I think you raised lots of suggestions, but those aren't actually the subject of your argument. The argument to us seems to have to do with the purported excessive time taken by the traffic stop. So I don't have much time. Please focus on that. Absolutely, Your Honor. Let's turn to that. We argue that the district court erred in denying the motion to suppress because the district court erroneously upheld the stop on two bases. First, the district court said the search did not prolong the stop because it was coextensive within the time in which the officers could reasonably have completed the traffic stop. And second, that Contreras consented to it. So first, I'll deal with the coextensive issue because that's a violation of Rodriguez, the Supreme Court case. Rodriguez says a search becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a traffic ticket. And in this case, the court said, well, after the officers completed the paperwork, they theoretically had time. Well, I think I'd like to focus on what I understand the district court actually to have said, which is there are two officers here, and one of them is doing the things that he wanted to do for the traffic stop, the paperwork, and so forth. The other officer was doing other things. And I don't see the district court saying what you've alleged. Maybe you could point me where the district court already says that, okay, you've got a given time parameter. You can do whatever you want during that time. That's not the sense I got from out of the district court's order. Well, I think the district court said, and let me find the order, that they had a certain amount of time and that this was... Well, they had the time necessary to complete what they were allowed to do during a traffic stop. That time doesn't seem to have been extended. The complaint has to do with what the second officer was doing during the time the first officer was doing the background checks which were permitted. So I don't really understand where the violation is. That's part of the prolongation, but at the point in time... Well, that's not a prolongation. If Officer 1 is taking the time he's allowed to take, Officer 2 can do whatever he wants during that time, and that's not a problem. That's correct, Your Honor. That's not a prolongation. I'm sorry, I didn't mean to interrupt. What our contention is that Officer 1 was not acting diligently, so that's part of the prolongation. He was slow walking... while the other officer was performing the pat-down before the handcuffing, and then once Mr. Contreras was detained, then he went to do the record search. Isn't that also consistent with a traffic stop? Well, I think the officer, he was asking about things that weren't related at the outset. No, no, the person who was doing the... You're saying he was prolonging time before doing the record search. Is that who we're referring to? Yes. My understanding from the record is that he was waiting while the other officer was performing a pat-down, not delaying time, but waiting to make sure that this would safely happen, and then go and do the record search. What's improper about that? Okay, I didn't get that from the record, because I think Mr. Contreras was handcuffed with his hands behind his back, so there was no issue of safety when he was doing the pat-down. He seemed to be just standing by and looking at the documents, and he spent some time, you know, before he actually started the search, he was just wandering around and standing outside the police car. So we're saying that that was a prolongation. But the... I'm sorry, I'll continue. The main issue we're contending, and to go back to what the district court held, the district court said that at the time they finished with the documents, the officer who had done the search came back, handed the documents, put the documents in the car. At that point, the traffic stop mission was completed. But the problem is, in that intervening time, Mr. Contreras gave his consent to have the car searched. And to me, I think that's the biggest problem for your case, is that during the course of this otherwise acceptable period of time in which one officer is doing the record search, the other officer obtains the consent to search the car, which means that he's no longer seized at that point, right? So there's going to be more time taken to search the car, and he never said, stop searching the car, I rescind my consent. Why is that a prolongation under those circumstances? Okay, well, let me get to that, because that's one of the issues that we argue, that consent does not excuse prolongation, based upon the Elias case. And we also argue that the consent was not voluntary, because the factors in the Washington case, and one of them is whether the defendant was in custody. And in Washington, although it's not in custody, this kind of detention is equivalent to custody in that he's not free to leave. So he was handcuffed with his hand behind his back, he was not free to leave, and therefore any consent that he gave was coerced. But don't we review that issue for clear error? In other words, the district court found that he gave his voluntary consent. Don't we review that finding for clear error? I think it's a mixed issue of law and fact. I'm not sure. I think it's a clear error standard of review. Whether his consent was voluntary or not, that's not, what's the legal aspect of that question? Well, the issue of the various standards. I mean, because you're not just looking at, for example, like whether he had a right, whether the defendant was notified he had a right not to consent. Whether he had told a search warrant could be obtained. There are multiple factors, no question. But failing one factor doesn't mean coerced, does not mean not voluntary. The district court recited factors. No, exactly. And that was what I was going to go into. Because the import of all of this, and the Washington court says that the most important factor is whether or not the defendant, whether he felt that he was free to leave or whether he felt. And those factors, I think, although he was told that the officer could stop, the officer also repeatedly said, you cooperate with us, we'll cooperate with you. In other words, he was told over and over again that if he helped them out, they would help him out, he would be let go with a warning. And so it wasn't really voluntary because it was coerced in the sense that he was constantly told that if he helped them out, he would be let go. And so the factors. Well, I don't find that in the record. I don't find a finding to that fact, and it seems to me highly unlikely. The officer says, look, let us search, we'll let you go. Of course, we find all sorts of great stuff, we're going to let you go. I don't think so. That's not a serious proposition, is it? Well, that's what they told him in trying to induce him to give consent to the search. What did they tell him? They said, if you help us out, we'll help you out. Yeah, it's your client that may have taken from that, okay, I'm going to go home scot-free no matter what they find. I don't think that's a plausible interpretation of what the officer said. Well, I think it was coercive in that he didn't realize. It is not by itself a finding that the consent was involuntary. I'm sorry, I didn't hear. Saying that a situation is coercive does not automatically lead to a finding that the consent was not voluntary and does not automatically establish the district court's explicit finding that it was voluntary, clearly erroneous. No, I think that it's the most important factor in the Washington case, whether or not the defendant reasonably felt he was free to leave. And I only have a minute left, so unless there are any further questions, thank you. Good morning, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. With the Court's permission, I want to make one quick point about the standard of review, and then I want to highlight two important concessions, one by the government, one by the defense that I think narrow the scope of what this Court needs to decide. The standard of review is clear error for the voluntariness finding, as Judge Sanchez pointed out. We said that, citing Jones, in our answering brief at page 15, and the defense didn't dispute that in the reply brief. On the concessions, the defense in footnote one of the first page of the reply brief concedes that under this Court's decision in Hilton, the criminal records check, the time it took to do the computer criminal records check, was valid and reasonable under Hilton. That takes care of the first seven minutes of this stop, which then focuses on the remaining four minutes, from about 26, minute 26, to about minute 30 in the video recording. That four minutes – Make sure I understand what you're talking about. Yes, Your Honor. You reference to some footnote in your brief? I'm sorry? Oh, I was referring to the reply brief. The first footnote in the defense reply brief cites this Court's decision in Hilton and concedes that the criminal records check time is reasonable under Hilton. Police are allowed to do that. Let me ask this. Ms. Young is positing that there was a prolongation before the records check began, which would not be covered under Hilton. How would you respond to that? With respect to my colleague, I did not take that as a serious argument. I thought, as one of Your Honors pointed out, more of a suggestion or a complaint throughout, that the officers were walking slowly and standing idly by and talking to each other. I mean, if you watch the video, there's nothing unreasonable about the way the officers initiated the stop. It took about a minute to walk over to the defendant to make contact and then to go back and begin the search. To the extent the officers were trading off, one officer was always standing with him for obvious safety concerns. Police are allowed to do that. So one officer, Officer Gomez, was standing with the defendant while Officer Gonzalez was running the check. That's not the issue before this Court. The issue before this Court, and this goes to our concession, is the four minutes that happened from the time the records check and the checking with headquarters and about the violin boys figuring out, scrolling through the computer to see his criminal history and the details of it, that ends at minute 26. Minute 30 is when the officers find the loaded magazine. And with due respect to Judge Clifton, I actually agree with my colleague. Can I ask? I'm not sure I understand that because I thought the consent to the car search occurred during the period of time in which the records search was taking place. So why would it matter this? I'm not sure why that four minutes matters because that four minutes occurs after consent has already been given. I agree with Your Honor. That four minutes was reasonable, but that four minutes is the only argument, the only colorable argument the defense has in this case. And that four minutes is what I want to address because the District Court did get it wrong, arguably, I think, as to one of the two bases for that four minutes. So if you take a look at Judge Clifton, and this is where I agree with my colleague here, page 34 of the excerpt's record, the District Court's, the top of the page, the District Court's alternative finding compares the amount of time it took to search the car to the counterfactual hypothetical amount of time that a reasonable records check would have taken. And we agree with the defense that under Rodriguez we're not allowed to do that. It's a reasonable argument. It was the Justice Thomas' dissenting argument, and it was the Solicitor General's argument in Rodriguez. But you can't do that. Under Rodriguez, you can't say, well, a normal records check could have taken 11 minutes. This one took seven, so you get an extra four minutes. So that's our understanding of what the District Court did. My focus is on what came immediately before that in the District Court's order. That is correct. A finding that it did not add time to the stop. I suppose it depends on how you read. We have a question about that four minutes. I understand that, and that's why we want to focus on it. But the general conclusion of the District Court was not based on a hypothetical how long it might have taken somebody else. I understand that's what spawned the defense argument, but that was an alternative that we don't have to adopt. Right. Nor should you because it's wrong under Rodriguez. What the District Court primarily held was that the consent, that the defendant extended the stop himself by consenting to the search of his car, which is going to take some reasonable amount of time. That's the argument that we wanted to address clearly. That's why we filed a 28-J letter. The notion that the defense is arguing, I think, that came out in the reply brief, that consent to a search somehow doesn't include consent to the amount of time reasonably necessary to do the search, can't possibly be right because it would mean that Rodriguez overruled five decades of Supreme Court consent search precedent. What Rodriguez says critically is you have to look at the duration of the seizure, and you also have to look at the actual duration that happened and not compare it to a counterfactual. So the District Court was exactly right on the top of page 33 in saying that the defendant's consent, which, as Judge Sanchez pointed out, was given during the records check when everything was valid, when that time period is valid. The defendant's consent to searching the car is what prolonged the stop for that extra four minutes because the officers were doing exactly what he consented to, which was searching the car. Now, the government also argues on appeal in the alternative that even if you don't want to go on that road, there was reasonable suspicion really at the outset of the stop, certainly by the time the officers finished doing the criminal records search, finding out the details of his drug and gun criminal history, and then talking to the defendant in which he admitted to trafficking methamphetamine  Certainly by the time the criminal records check finished, there was ample reasonable suspicion to prolong the stop to continue the investigation. I think that's one of your shakier arguments, to be honest. What I understand is you know his criminal record. He's dressed in a certain way. He's driving in a certain location. How is that reasonable suspicion that some criminal activity may be afoot in his car? There are a few additional factors. To sort of list them all out, he's driving someone else's car without a license. He tells the officers he just got out of federal custody, and he has very obvious face tattoos and gang clothing on. That's in the district court's decision. The record additionally supports that he's in front of a drug-selling house. He drives away when he first sees the officers. He has no license. I'm sorry I mentioned that. His criminal history is not just Christine felonies in general. Specifically, they're all drug crimes. The most recent California state crime is drugs and guns together. It looks like some sort of analogy to 924C. He admits to trafficking meth, and it's not just that it was an issue of a dismissed case. When the officers are talking to him about why he got out of jail. But all this is past activity, so you're saying he's a walking reasonable suspicion? Anywhere he drives, because he has his tattoos and his criminal record, the officers can stop him and suspect that he may have something in his car? No, I don't think so. I think the officers stopped him for the traffic infraction. But once they start talking to him and develop, I mean, reasonable suspicion is evaluated dynamically. You can update your information. Officers get more information once they make contact with a suspect or with a motorist or with anybody, even in a voluntary encounter. You can't pull someone over for having a face tattoo. But once they pull him over and start talking to him, and he admits to, he admits factually to the drug crime that he spent eight months in federal custody for. He just says he beat it. Again, the fact that he stopped in front of a drug cell house, that's not a random house he stopped in front of. The fact that he was evasive, the marijuana smell in the car, reasonable suspicion is lower than probable cause bar, and it has to be taken in the totality of the circumstances. As you say, though, if we find that the consent was given voluntarily, we don't need to get to a reasonable suspicion basis. I agree. I want to make sure the court's clear on what the government's two arguments are. Because the district court had two sort of bases, one of which is incorrect in our view, one of which is correct, which is the consent. We are adding, there's also on this record, ample reasonable suspicion. And so those are our two arguments. The court can decide either way on those. But I think that the clearest basis, the one the district court adopted, is if someone validly consents to do something, like search your car. But it could be to stop and have a conversation, to search your bag, to chat for a while about the meaning of life. If someone stops me on the street and asks me to talk for a moment and I stop, I am consenting to the reasonable amount of time it takes to have that conversation. One last question on my end. Yes, Your Honor. He is handcuffed, though. And so it's not – how freely would a reasonable person feel that they could walk away from the traffic stop or when you're in handcuffs? I mean, that's what presents a little bit of a closer question to me, although I'm mindful that we would be reviewing this under clear error. I understand completely, Your Honor. I think, as you pointed out, the clear error standard is very significant here. Jones, this court's decision, Jones, says it's a factual clear error question. It sets forth the four standards. Those are the standards, the legal standards the district court applied here. It's the same one the defense is asking for. There's no legal disagreement here. I think the fact that he's in handcuffs is significant. It's part of the totality of the circumstances. It certainly would make him feel less free to leave. On the flip side, the officers explicitly told him, you can stop me any time, right, which takes this case very far away from Rodriguez, for example, where I think part of what drove the Supreme Court's decision in Rodriguez is the motorist specifically refused to consent to all these things the officers were asking him to do, and then the officers just went ahead and did it anyway. And the Supreme Court says, well, if you're going to do that, it's not consensual. It's definitely a seizure, and we're going to analyze the seizure as, you know, like you're seizing a free person for two minutes, and that matters, and you have to make that two-minute seizure reasonable. That's why we have Rodriguez as a precedent and sort of why we have this doctrine of law. So I think it matters a lot. You're over your time. Do you want to wrap up? Yes, Your Honor. If the court has any more questions about the record, I'm happy to answer them. Otherwise, we would ask you to affirm the judgment below. I don't think we have any more questions. Thank you very much, Counsel. Thank you, Your Honor. Thank you. I just want to respond briefly. With respect to the comments about reasonable suspicion, I think we've addressed those in the brief, so I won't go over them. The prosecutor said, similar to a stop on a street, but the difference here is that in a stop on a street like a tarry stop, the person can walk away.  That's why Washington says this is different. And also in one of the cases that they cited in their 28-J letter, the Tenth Circuit case in Gomez-Arzade, the Court emphasized the fact that the person is not free to go when they're stopped. And in that case, they said that the consent was valid when the driver was told, you are free to go now. Here's your paperwork. You're free to go. Now do you consent to a search. Otherwise, it's inherently coercive because the defendant, in this case, is handcuffed, can't leave, doesn't have his documents, and can't drive his car away. And as I argued in my opening remarks, the fact that the officers said they could be stopped at any time was tempered by the fact that they repeatedly told him, if you cooperate with us, we'll cooperate with you. We'll help you out. Are there any questions? No questions. Thank you very much. Thank you, counsel, for your arguments. The matter will stand submitted.
judges: CLIFTON, SANCHEZ, Korman